**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| |
|---|
| MIESHA HAIGHT, |
|     1513 Jarvis Avenue |
|     Oxon Hill, MD 20745 |
| |
|          Plaintiff, |
| |
| v. |
| |
| SHAYNE C. O'BANNON, |
|     300 Indiana Ave., NW |
|     Washington, DC 20001 |
| |
| CATHY L. LANIER, |
|     300 Indiana Ave., NW |
|     Room 5080 |
|     Washington, DC 20001 |
| |
| DISTRICT OF COLUMBIA, |
|     Office of the Attorney General |
|     441 4th Street, NW |
|     Washington, DC 20001 |
| |
|          Defendants. |

No. 14-cv-1211

**COMPLAINT AND**
**DEMAND FOR JURY TRIAL**

---

### CIVIL RIGHTS COMPLAINT

Comes Now Plaintiff, Miesha Haight, by and through her attorneys, and alleges and seeks relief as follows:

### JURISDICTION AND VENUE

1.    This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and is brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1988.

2.    The Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 2201.

1

3.     Supplemental jurisdiction over state and common law claims is invoked pursuant to 28 U.S.C. § 1367 and *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), as all state and common law claims asserted herein arise from the same nucleus of operative facts as the federal claims.

4.     This case is instituted in the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1391 as the judicial district in which all relevant events and omissions occurred and in which Defendants maintain offices and/or reside.

## PARTIES

5.     At all times material hereto, Plaintiff Miesha Haight was a resident of the District of Columbia, a Citizen of the United States, and an employee of the General Services Administration ("GSA").  Plaintiff currently resides at 1513 Jarvis Avenue, Oxon Hill, in the State of Maryland.

6.     At all times material hereto, Defendant Shayne Casey O'Bannon was acting under color of state law within the scope of his official duties as a law enforcement officer employed by the Metropolitan Police Department ("MPD") of Defendant District of Columbia.

7.     Defendant District of Columbia ("Defendant District") is the legal entity responsible for itself and for the MPD.  This Defendant is also the employer of the individual Defendants and is a proper entity to be sued under 42 U.S.C. § 1983.

8.     Defendant Cathy L. Lanier is sued her in individual and official capacity as the Chief of the MPD and an employee of Defendant District, with an office address of 300 Indiana Avenue, NW, Room 5080, Washington, DC 20001.  As the Chief of the MPD at all relevant times, Defendant Lanier had the final decision-making power regarding the conduct of MPD Officers as well as the hiring, firing, training and supervision of such officers.

9.    Defendant District and Defendant Lanier are properly sued directly under 42 U.S.C. § 1983 for their own and their delegated deliberately indifferent unconstitutional decisions, policies, practice, habits, customs, usages, training and derelict supervision, ratification, acquiescence and intentional failures which were moving forces in the complained of constitutional and statutory violations and resulting injuries.  They are also properly sued for the tortious actions of Defendant O'Bannon under principles of *respondeat superior*, and for their own negligent training and supervision of him.

### NOTICE

10.    Pursuant to D.C. Code § 12-309, Plaintiff provided Defendant District with adequate and timely notice of her claim, thereby satisfying all administrative prerequisites.  A copy of Defendant District's response, acknowledging receipt, is annexed hereto as Exhibit A.

### FACTS COMMON TO ALL CLAIMS

### The Incident

11.    In the early morning hours of Saturday, July 20, 2013, Officer O'Bannon appeared at Plaintiff's apartment complex located at 3543 Stanton Road, SE, DC, along with the DC Fire Department to handle an unknown situation elsewhere in the complex.

12.    At approximately 1:45 a.m. that morning, following the resolution of the unknown situation and the departure of the Fire Department, Officer O'Bannon remained on the scene and responded to a verbal dispute between two residents of the apartment complex.

13.    Plaintiff was one of numerous onlookers who were peacefully observing the verbal dispute and O'Bannon's attempted intervention.

14.    Officer O'Bannon physically separated the two quarreling residents, angrily yelling at them to "shut up" and threatening that the next person who talked would be arrested.

3

15. At this time, one of the quarreling residents—a neighbor of Plaintiff's named Javonda—became loud and started yelling obscenities.

16. Wanting to keep peace and not see anyone get arrested or further anger Officer O'Bannon, Plaintiff began speaking calmly to Javonda, pleading with her to be quiet.

17. To the shock of all onlookers, Officer O'Bannon suddenly and without warning went after Plaintiff, grabbing her and pushing her up against a spiked metal fence. Officer O'Bannon held Plaintiff's hands tightly behind her back and pushed her body into the spiked metal fence with such force as to cause the spikes to press painfully into her abdomen and breasts.

18. In addition, to Plaintiff's and the onlookers' dismay, Officer O'Bannon's physical handling of Plaintiff caused her skirt to rise up, thereby exposing her buttocks and genitalia to Officer O'Bannon and the many onlookers. Plaintiff repeatedly asked Officer O'Bannon to pull her skirt down, but he failed to do so, leaving her exposed and humiliated.

19. Plaintiff pleaded with the onlookers to help her. Finally, one of the onlookers came over and pulled Plaintiff's skirt down while Officer O'Bannon continued to yell at her.

20. Plaintiff also asked that a female officer be called, complaining that Officer O'Bannon was hurting her by handling her as if she were a man, without any sensitivity to her female anatomy.

21. Plaintiff was not intoxicated, was not yelling, and was not in any way disorderly prior to being detained. Plaintiff had not committed a crime, nor was there any indication that she had done so or was about to do so.

22. Plaintiff repeatedly asked Officer O'Bannon why he was assaulting her, but he refused to answer.

23.    Similarly, several onlookers asked Officer O'Bannon why he was "arresting" Plaintiff, telling him that she had not done anything to justify his actions.

24.    Defendant O'Bannon failed to articulate any reason whatsoever for his restraint of Plaintiff and use of force.   In fact, although Officer O'Bannon unquestionably laid hands on Plaintiff, restraining her and causing her physical and emotional pain, he never even asserted that he was arresting her, and did not attempt to handcuff her or issue a *Miranda* warning.   O'Bannon merely repeated, over and over, an instruction that Plaintiff keep her arms behind her back.

25.    Even after it was apparent that Officer O'Bannon's unexplained use of force was flashing Plaintiff's buttocks and genitalia and causing Plaintiff considerable distress, he did not call a female officer or wait for any other form of back-up.   Officer O'Bannon did not want any other officers to witness what he was doing, much less what he was about to do.

26.    After continuing to twist her arms and press her against the spiked fence for several minutes, Officer O'Bannon escorted Plaintiff away from the fence and away from the crowd, where he again demanded that she keep her arms behind her back.

27.    Plaintiff agreed to keep her arms behind her back, but then, inexplicably, rather than put handcuffs on her, Officer O'Bannon released his grip on her arms.

28.    Humiliated by what had happened and terrified of what might come next, Plaintiff walked toward her apartment, which was no more than thirty (30) feet away, to go inside.

29.    Unbeknownst to Plaintiff, Officer O'Bannon followed her across a courtyard and down a short set of stairs to her apartment doorstep and, not knowing he could be seen by onlookers who had followed him, punched Plaintiff in the mouth.   The force of the punch was so severe that it knocked Plaintiff to the ground.

30.    Several witnesses exclaimed at the sight of Officer O'Bannon punching Plaintiff

5

and begged Officer O'Bannon to stop.

31.    Plaintiff, dazed, confused, in pain and afraid, began to stand up and stumbled backwards into the doorway to her apartment.

32.    Officer O'Bannon, apparently angry that Plaintiff did not stay down on the ground, grabbed Plaintiff by her hair, pulling her out of the apartment doorway to the stairwell outside her apartment.

33.    Officer O'Bannon pulled Plaintiff's head and hair with such force and at such an awkward angle as to slam her head into the concrete steps and causing her skirt to come up all the way to her waist line, again exposing her buttocks and genitals to residents witnessing the assault.

34.    Plaintiff managed to turn around and look at Officer O'Bannon to ask him why he was doing this her, but Officer O'Bannon did not allow her to speak, and after repeatedly hitting her in the face, he grabbed her and shoved her to the ground, yelling "stay the fuck down."

35.    One of the onlookers admonished Officer O'Bannon that his conduct was illegal and a violation of Plaintiff's civil rights.

36.    Then, for unknown reasons Officer O'Bannon let go of Plaintiff a second time and said to her, confusingly, "get the fuck up."

37.    Plaintiff, bleeding and in pain, got up and walked up the stairs where she stopped and stood still, holding her hands over her head.

38.    Officer O'Bannon followed Plaintiff, grabbed her head in his left arm in a choke hold, and pulled her toward the street where finally other officers had arrived in a patrol car.

39.    At no point during the entire incident did Officer O'Bannon inform Plaintiff that she was under arrest, nor did he state any reasons for his restraint of and physical attacks on

Plaintiff.

40.     Although there was no probable cause to arrest Plaintiff, Plaintiff was taken into custody and transported to United Medical Center Emergency Room where she was treated for multiple lacerations and contusions.

41.     Plaintiff received twelve (12) stitches in her mouth and was discharged after sunrise in the morning of July 20.

42.     Subsequently, police officers took Plaintiff to the 7th District precinct, where she was booked for disorderly conduct and misdemeanor assault on a police officer.

43.     The charges were summarily dropped as "no papered [*sic*]."

### Damages

44.     As a result of Defendant O'Bannon's use of force, Plaintiff suffered from multiple lacerations and contusions on her face, abdomen, and knees.  These injuries caused Plaintiff to suffer symptoms of pain, discomfort, stiffness, limited mobility and strength of her back, neck, right shoulder, and knees that persisted for several months following the incident.  To the present day, Plaintiff continues to feels pain and stiffness on an intermittent basis as a result of the injuries sustained from Officer O'Bannon's assault.

45.     In the months following the incident, Plaintiff suffered from severe anxiety, sleeplessness, nightmares, fear of going out in public, fear of encountering police officers, fear and anxiety about encountering her neighbors, humiliation, anger, sadness, depression, self-loathing and confusion.

46.     Plaintiff's humiliation and emotional distress from being publicly exposed by Defendant O'Bannon's use of force was so great that she could no longer bear to live in the same apartment complex and moved soon after the incident, at considerable financial expense.

47.    Further, Plaintiff was held out of work by the GSA in her job as an associate teacher for two weeks without pay pending an investigation into her arrest.  Upon her return to work, Plaintiff felt stigmatized because of her colleagues' awareness of her arrest, which continues to adversely impact her opportunities for advancement and will always be a blight on her record.

48.    Plaintiff also continues to suffer ongoing psychological trauma stemming from the unprovoked and brutal physical assault, including emotional distress, sadness, anxiety, stress, anger, depression, embarrassment, frustration, sleeplessness, nightmares and flashbacks.

49.    As a direct and proximate result of the wrongful conduct of each of the Defendants, Plaintiff has been substantially injured. These injuries include, but are not limited to, loss of constitutional and federal rights, physical injuries and impairments, pain and emotional distress, reputational harm, lost wages, and ongoing special damages for medically/psychologically related treatment and expenses.

50.    Furthermore, the conduct of Defendant O'Bannon was willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts detailed herein, for each cause of action in which Defendant O'Bannon is named below.

## FIRST CAUSE OF ACTION

**42 U.S.C. § 1983 - False Arrest in Violation of the Fourth Amendment**
**(against Defendant O'Bannon)**

51.    Plaintiff re-alleges and incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

52.    Under 42 U.S.C. § 1983:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the

constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

53.   Plaintiff in this action is a citizen of the United States and Defendant O'Bannon is a person for purposes of 42 U.S.C. § 1983.

54.   Defendant O'Bannon at all relevant times was acting under the color of state law—i.e. District of Columbia law—in his capacity as a Metropolitan police officer and his acts or omissions were conducted within the scope of his official duties or employment.

55.   At the time of the complained of events, Plaintiff had a clearly established constitutional right under the Fourth Amendment to be secure in her person with the liberty to move freely.

56.   Plaintiff also had the clearly established constitutional right under the Fifth Amendment to bodily integrity and to be free from false arrest and detention by law enforcement.

57.   Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

58.   Defendant O'Bannon's actions, use of force, and physical restraint of Plaintiff, as described herein, were objectively unreasonable in light of the facts and circumstances confronting him and violated the Fourth Amendment rights of Plaintiff.

59.   Defendants O'Bannon's actions, use of force, and physical restraint of Plaintiff, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights. The false arrest by Defendant O'Bannon shocks the conscience and violated these Fifth Amendment rights of Plaintiff.

60.   Defendant O'Bannon unlawfully and without probable cause, seized Plaintiff by means of objectively unreasonable, excessive and conscience-shocking physical force, and

detained her, thereby depriving Plaintiff of her freedom.

61.    Defendant O'Bannon engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's federally protected constitutional rights.

62.    Defendant O'Bannon did so with shocking and willful indifference to Plaintiff's rights and either knew or should have known that he lacked probable cause to instigate an arrest.

63.    The acts or omissions of Defendant O'Bannon in violation of Plaintiff's constitutional rights were the direct cause of Plaintiff's physical and emotional injuries.

64.    As a direct and proximate result of Defendant O'Bannon's violation of Plaintiff's constitutional rights, Plaintiff has suffered actual physical and emotional injuries, and other damages as described herein, entitling her to relief.

65.    Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

## SECOND CAUSE OF ACTION

**42 U.S.C. § 1983 – Excessive Force in violation of the Fourth and Fifth Amendments
(Against Defendant O'Bannon)**

66.    Plaintiff re-alleges and incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

67.    At the time of the complained of events, Plaintiff had a clearly established constitutional right under the Fourth Amendment to be secure in her person from unreasonable seizure through excessive force.  Plaintiff also had the clearly established constitutional right under the Fifth Amendment to bodily integrity and to be free from excessive force by law enforcement.  Plaintiff had the clearly established constitutional right to privacy, emanating from

the Fourth and Fifth Amendments, and which included the right not to have her private parts publicly exposed without her consent by means of excessive force.

68.   Defendant O'Bannon's actions and use of force, as described herein, were objectively unreasonable, excessive, and conscience-shocking in light of the facts and circumstances confronting him.

69.   Defendant O'Bannon's actions and use of force were also willful, malicious, in bad faith, and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights, and with a conscious awareness that he would cause Plaintiff severe physical and emotional injuries.

70.   As a direct and proximate result of Defendant's violation of Plaintiff's constitutional rights, Plaintiff has suffered actual physical and emotional injuries, and other damages described herein, entitling her to relief.

## THIRD CAUSE OF ACTION

### 42 U.S.C. § 1983 – Retaliation in Violation of the First Amendment
### (Against Defendant O'Bannon)

71.   Plaintiff re-alleges and incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

72.   At the time of the complained of events, Plaintiff the clearly established constitutional right to be free from retaliation for the exercise of protected speech.

73.   Any reasonable police officer knew or should have known of this right at the time of the complained of conduct as it was clearly established at that time.

74.   To the extent that Officer O'Bannon's order that whoever next speaks would be arrested was directed at persons other than the individuals who were engaged in a verbal dispute, that order was an unlawful prior restraint of speech, which violated clearly established First

Amendment law, and at a minimum the order was so clearly vague as to whom it was directed towards that it could not pass muster under clearly-established First Amendment principles.

75.   Plaintiff exercised her constitutionally protected right to question law enforcement and/or engaged in protected speech related to the constitutional rights of citizens with respect to seizures of her person by the police and objectionable police conduct.

76.   Retaliatory animus for Plaintiff's exercise of her constitutionally protected right to speak with her fellow citizen regarding a police officer's instructions was a substantial motivating factor in the false arrest of Plaintiff by Defendant O'Bannon.

77.   Retaliatory animus for Plaintiff's exercise of her constitutionally protected right to question a police officer regarding the scope of his legal authority to seize her person was a substantial motivating factor in the excessive force used by Defendant O'Bannon.

78.   The false arrest of Plaintiff in retaliation for Plaintiff's peaceful speech, uttered after Officer O'Bannon issued an unlawful and vague order to be quiet, would deter a person of ordinary firmness from engaging in the protected conduct.

79.   The excessive force used against Plaintiff in retaliation for her protected conduct would deter a person of ordinary firmness from continuing to engage in the protected conduct.

80.   Defendant O'Bannon engaged in the conduct described herein willfully, maliciously, in bad faith, and in reckless disregard of Plaintiff's constitutional rights.

81.   As a direct and proximate result of Defendant's violation of Plaintiff's constitutional rights, Plaintiff has suffered actual physical and emotional injuries, and other damages described herein, entitling her to relief.

## FOURTH CAUSE OF ACTION

**42 U.S.C. §§ 1981, 1983 – Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision in violation of the Fourth, Fifth, and First Amendments
(Against Defendants District of Columbia and Lanier)**

82.    Plaintiff re-alleges and incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

83.    Defendants District of Columbia and Lanier are persons for purposes of § 1983 and were, at all times relevant hereto, acting under the color of District of Columbia law.

84.    Plaintiff had the following clearly established rights at the time of the complained of conduct:

    a.   the right to be secure in her person from unreasonable seizure through excessive force, under the Fourth Amendment;

    b.   the right to bodily integrity and to be free from excessive force by law enforcement under the Fifth Amendment; and,

    c.   the right to exercise his constitutional rights of free speech under the First Amendment without retaliation.

85.    Defendant Lanier and Defendant District were, at all relevant times, policymakers for the District of Columbia and the MPD, and in that capacity established policies, procedures, customs, and/or practices for the same.

86.    Defendant O'Bannon, at all relevant times, was acting pursuant to District custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice.

87.    Upon review of Officer O'Bannon's conduct described herein, an MPD representative stated that "all actions by Officer O'Bannon were justified and within Metropolitan Police Department Policy."

88.    In light of the Department's endorsement of Officer O'Bannon's conduct as "within Metropolitan Police Department Policy," it is manifest that Defendant Lanier and Defendant District developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were the proximate cause of the violations of Plaintiff's constitutional and federal rights as set forth herein and in the other claims, resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

89.    For example, to the extent that it is MPD policy, custom, or practice to permit an officer to forcibly detain a citizen for no reason other than engaging in peaceful speech, and without stating any reasons for the detention and use of force, such policy, custom or practice violates clearly established law governing the constitutionally permissible procedures for effecting an arrest of a free person.

90.    To the extent that it is MPD policy, custom, or practice for officers to instruct peacefully gathered citizens to be quiet or be arrested, and for officers to then arrest whomever speaks irrespective of the content of said speech, that policy, custom or practice violates the First Amendment by encouraging the use of prior restraints on speech and with the likely effect of having a chilling impact on lawful and protected speech out of fear of arrest and assault.

91.    Defendant Lanier and the Defendant District have created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public.

92.    In light of the duties and responsibilities of those police officers that participate in arrests and preparation of police reports on alleged crimes, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional and federal rights such as those described herein, that the failure to provide such specialized training and supervision necessarily reflects deliberate indifference to those rights.

93.    The deliberately indifferent training and supervision provided by Defendant District and Defendant Lanier resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant District and Defendant Lanier and were moving forces in the constitutional violations chronicled herein.

94.    The acts or omissions of these Defendants, as described herein, deprived Plaintiff of her clearly-established constitutional rights and caused her other damages.

95.     The acts or omissions of Defendants in violation of Plaintiff's constitutional rights were the direct and proximate cause of Plaintiff's injuries and losses, entitling her to relief.

96.    Finally, Plaintiff seeks appropriate declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 to redress Defendants' above-described ongoing deliberate indifference in policies, practices, habits, customs, usages, training and supervision with respect to the rights described herein, and with respect to the ongoing policy and/or practice of the failing to investigate or appropriately handle complaints of the same.

## FIFTH CAUSE OF ACTION

### False Arrest under the Common Law of the District of Columbia
### (Against Defendant O'Bannon)

97.    Plaintiff re-alleges and incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

98.   False arrest occurs when there is an unlawful deprivation of freedom of locomotion for any amount of time, by actual force or a threat of force.

99.   Defendant O'Bannon unlawfully and without probable cause, seized Plaintiff by means of objectively unreasonable, excessive and conscience-shocking physical force, and detained her without reason or cause, thereby depriving Plaintiff of her freedom.

100.   Defendant O'Bannon's actions, use of force, and physical restraint of Plaintiff, as described herein, were objectively unreasonable and without probable cause in light of the facts and circumstances confronting him.

101.   Defendants O'Bannon's actions, use of force, and physical restraint of Plaintiff, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's freedom.

102.   As a direct and proximate result of Defendant O'Bannon's conduct, Plaintiff has suffered and continues to suffer damages, entitling her to relief.

**<u>SIXTH CAUSE OF ACTION</u>**

**Assault and Battery under the Common Law of the District of Columbia
(Against Defendant O'Bannon)**

103.   Plaintiff re-alleges and incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

104.   An assault consists of an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim.

105.   A battery is an intentional act that causes a harmful or offensive bodily contact.

106.   Officer O'Bannon's conduct as set forth above, caused extreme fear and anxiety in Plaintiff, and a reasonable apprehension of bodily harm and/or further offensive conduct, constituting assaults on Plaintiff under District of Columbia law.

16

107.   Defendant O'Bannon's conduct as set forth above, was an excessive use of force and consisted of unwelcome, harmful bodily contact without consent of Plaintiff, thereby constituting battery under District of Columbia law.

108.   As a direct and proximate result of Defendant O'Bannon's conduct, Plaintiff has suffered and continues to suffer damages, entitling her to relief.

## SEVENTH CAUSE OF ACTION

### Vicarious Liability for Assault, Battery, and False Arrest
### (against Defendant District of Columbia and Lanier under *Respondeat Superior*)

109.   Plaintiff re-alleges and incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

110.   Defendant O'Bannon, at all times relevant hereto, was a clearly identified, on duty police officer acting within the scope of his employment with the MPD and his acts or omissions described herein were conducted within the scope of his official duties or employment.

111.   Defendants District of Columbia and Lanier are liable for the negligent or intentional torts committed by their employees during the course of their employment.

112.   As a direct and proximate result of Officer O'Bannon's unlawful conduct within the scope of his employment, Plaintiff has suffered damages, entitling her to relief.

## EIGHTH CAUSE OF ACTION

### Negligent Supervision and Training under the Common Law of the District of Columbia
### (against Defendants District of Columbia and Lanier)

113.   Plaintiff re-alleges and incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

114.   The District of Columbia owes a duty of care to the public based on the conduct of its employees.

115.  Defendant Lanier, as Chief of the MPD, was responsible for ensuring that all police officers are adequately trained and supervised to protect the law-abiding public from harm, including, first and foremost, harm caused by the police officers themselves.

116.  The conduct of Defendant O'Bannon, as described herein, was a manifest dereliction of the duty owed to Plaintiff and the acts or omissions by Defendant O'Bannon were reflective of the failure of the MPD to adequately train, supervise and retrain periodically its officers.

117.  Defendants District of Columbia and Lanier knew or should have known that Defendant O'Bannon required specific, detailed training in the manner and methods allowed to be used when dealing with the public and the proper procedures for obtaining a warrant or finding probable cause for an arrest.

118.  The District of Columbia and Lanier failed in their duty of care to Plaintiff by neglecting to adequately train, retrain and supervise Defendant O'Bannon.

119.  As a proximate result of Defendants' negligence, Plaintiff has suffered damages as described herein, entitling her to relief.

## **PRAYER FOR RELIEF**

Plaintiff prays that this Court enter judgment for the Plaintiff and against each of the Defendants and grant:

A.  An award of damages totaling not less than $2,000,000, including:

    i.  compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

    ii.  economic losses on all claims allowed by law;

    iii.    special damages in an amount to be determined at trial;

    iv.    punitive damages on all claims allowed by law against individual Defendants and in an amount to be determined at trial;

B.  attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

C.  pre- and post-judgment interest at the lawful rate;

D.  declaratory and injunctive relief to redress Defendants' above-described policies, practices, habits, customs, usages, training and supervision; and,

E.  any such other and further relief that this court deems just and proper.

### JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury as to all issues.

Respectfully submitted:

July 18, 2014

By: _____

Matthew J. Peed (DC Bar no. 975974)
Brian C. Brook (DC Bar no. 1013230)
CLINTON BROOK & PEED
1455 Pennsylvania Avenue, NW, Suite 400
Washington, DC 20004
Tel. (202) 621-1828
Fax (202) 204-6320

Leonard B. Ference (DC Bar no. 995053)
Law Offices of Leonard B. Ference
1250 24th Street, NW, Suite 300
Washington, DC 20037
Tel. (202) 467-2783
Fax (202) 821-4703