**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MIESHA HAIGHT,**<br>Plaintiff,<br><br>v.<br><br>**SHAYNE O'BANNON, *et al.*,**<br><br>Defendants. | Case No. 1:14-cv-01211 (CRC) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Miesha Haight was arrested for failing to follow a police officer's verbal commands during a late-night altercation between two of her neighbors. Haight claims that her arrest was unjustified and that the arresting officer assaulted her in the process of carrying it out. She has filed suit against the officer for false arrest, excessive force, and violation of her First, Fourth, and Fifth Amendment rights. She has also sued the District of Columbia and Police Chief Cathy Lanier for vicarious liability and negligent supervision of the officer, as well as for maintaining policies that Haight claims are deliberately indifferent to citizens' constitutional rights. The defendants move to dismiss Haight's constitutional claims against the District and all of her claims against Chief Lanier. Finding that Haight has failed to plead facts that could establish that an official policy or custom motivated the officer's alleged wrongdoing and that Chief Lanier had no personal involvement in the incident, the Court will grant the partial motion to dismiss.

## I. Background

The following facts are drawn from Ms. Haight's complaint. The Court accepts them as true for the purpose of resolving the defendants' partial motion to dismiss. Officer Shayne O'Bannon of the District of Columbia Metropolitan Police Department ("MPD") arrived at Haight's apartment complex during the early morning hours of July 20, 2013 and proceeded to separate two residents who were arguing with one another. Compl. ¶¶ 11–14. According to Haight, O'Bannon informed

all present, including her, that the next person to speak would be arrested. Id. ¶ 14. When one of the quarreling residents then began yelling obscenities, Haight says she urged her to be quiet. Id. ¶¶ 15–16. O'Bannon allegedly responded by pushing Haight against a spiked metal fence, causing her skirt to rise up above her waist. Id. ¶¶ 16–26. Haight claims that O'Bannon briefly released her, but then followed her as she walked towards her apartment, punched her in the mouth, pulled her hair, and slammed her head into concrete steps. Id. ¶¶ 27–34. O'Bannon and other MPD officers then took Haight into custody and brought her to the emergency room, where Haight was treated for lacerations and contusions and received 12 stitches in her mouth. Id. ¶¶ 40–41. She was later booked for disorderly conduct and misdemeanor assault on a police officer, but prosecutors declined to pursue these charges. Id. ¶¶ 42–43. Haight submitted a claim for damages to the District's Office of Risk Management, which determined after an investigation that Haight had failed to comply with O'Bannon's verbal commands and "[a]ll actions by Officer O'Bannon were justified and within Metropolitan Police Department Policy." Compl. Ex. A at 1. Haight then filed this suit. Her complaint alleges five counts against Officer O'Bannon for false arrest in violation of the Fourth Amendment and District of Columbia common law, excessive force in violation of the Fourth and Fifth Amendments, retaliation in violation of the First Amendment, and common law assault and battery. It further alleges three counts against the District of Columbia and MPD Chief Lanier, in both her official and personal capacities, for maintaining policies and procedures exhibiting deliberate indifference to constitutional rights, vicarious liability for O'Bannon's alleged common law torts, and negligent supervision and training. The defendants now move to dismiss Haight's constitutional claims against the District and all of her claims against Lanier. They have not moved to dismiss Haight's claims against Officer O'Bannon.

## II. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must be granted if the allegations in the complaint do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility entails "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the court "must take all of the factual allegations in the complaint as true," legal conclusions "couched as a factual allegation" do not warrant the same deference. Id. (citing Twombly, 550 U.S. at 555).

## III. Analysis

### A. Claims Against Chief Lanier in Her Official Capacity

Defendants move to dismiss the claims brought against Chief Lanier in her official capacity. They argue that the complaint lacks allegations relating directly to Lanier's official conduct and thus these claims are redundant to Haight's claims against the District of Columbia. Haight responds that the Court is not required to dismiss individuals in their official capacities when the city is also a party to the suit, though she acknowledges that "retaining Chief Lanier as a Defendant in her official capacity does not provide any additional relief." Pl.'s Opp'n to Defs.' Partial Mot. to Dismiss at 13. Haight is correct that the Court is not required to dismiss individuals in their official capacities when the city is also party to the suit. See Owens v. District of Columbia, 631 F. Supp. 2d 48, 54 (D.D.C. 2009). But she offers no persuasive reasons for the Court to exercise its discretion to retain the official capacity claims here. Because dismissing redundant official capacity claims is "'the overwhelming approach that has been taken by members of this Court, as well as the position taken by other courts,'" the Court will dismiss Haight's official capacity claims against Chief Lanier. Brown v. Corrections Corp. of Am., 603 F. Supp. 2d 73, 79 (D.D.C. 2009) (quoting

Price v. District of Columbia, 545 F. Supp. 2d 89, 94 (D.D.C. 2008)); accord Hardy v. District of Columbia, 601 F. Supp. 2d 182, 186-87 (D.D.C. 2009) ("Claims brought against government employees in their official capacity are treated as claims against the employing government and serve no independent purpose when the government is also sued.").

B. Claims Against Chief Lanier in Her Individual Capacity

Defendants also move to dismiss the complaint against Chief Lanier in her individual capacity. Because the complaint lacks any allegations that Lanier was personally involved in the single incident at issue, the Court will dismiss the individual capacity claims as well. See Jones v. Horne, 634 F.3d 588, 602 (D.C. Cir. 2011) (dismissing Section 1983 claims against individual where complaint did not allege personal conduct causing alleged constitutional violations); Lesesne v. Doe, No. 10-CV-00602 (CRC), 2014 WL 4100008, at *3 (D.D.C. Aug. 21, 2014) (same); Jefferies v. Dist. of Columbia, 917 F.Supp.2d 10, 25–26 (D.D.C. 2013) (same); Way v. Johnson, 893 F.Supp.2d 15, 22 (D.D.C. 2012) (same).

C. Constitutional Claims Against the District of Columbia and Lanier

Haight alleges that O'Bannon's conduct reflected deliberately indifferent policies, practices, customs, training, and supervision by the District of Columbia in violation of the First, Fourth, and Fifth Amendments of the Constitution.[1] A municipality may be held liable for the constitutional violations of its officers if they are caused by municipal policies, customs, or practices. See Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 691 (1978). Courts engage in a two-part inquiry to determine whether a plaintiff has stated a claim for municipal liability. Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citing Collins v. City of Harker Heights, 503

---

[1] Haight alleges constitutional claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1983, but Section 1981 does not provide a private cause of action here independent from Section 1983. See Brown v. Sessoms, 774 F.3d 1016, 1021 (D.C. Cir. 2014) (citing Sledge v. District of Columbia, 869 F.Supp.2d 140, 145 (D.D.C. 2012)).

U.S. 115, 124 (1992)). First, the court evaluates "whether the complaint states a claim for a predicate constitutional violation." Id. At this step, "[a]ll that is being established . . . is that there is some constitutional harm suffered by the plaintiff, not whether the municipality is liable for that harm." Baker, 326 F.3d at 1306. Second, the court determines "whether the complaint states a claim that a custom or policy of the municipality caused the violation." Id. (citing Monell, 436 U.S. at 694). To do so, the complaint must "allege[] an affirmative link" between the policy and the incident "such that a municipal policy was the moving force behind the constitutional violation." Id. (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985); City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989)).

Haight's allegations clearly satisfy the first part of the inquiry, as excessive force and false arrest constitute predicate constitutional violations. Graham v. Connor, 490 U.S. 386, 388 (1989) (holding that claims that law enforcement officials used excessive force in making an arrest "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard"). Yet the complaint falls short of the second step of the test, as Haight does not allege facts that could establish that an MPD policy was the moving force behind O'Bannon's alleged wrongdoing. Haight argues that the city has admitted that the MPD has a policy or custom of deliberate indifference to citizens' constitutional rights that caused her injuries because the District's Office of Risk Management wrote in a letter to her lawyer that "[a]ll actions by Officer O'Bannon were justified and within [MPD] Policy." Compl. ¶¶ 87 – 88 & Ex. A at 1. But Haight reads far too much into this one sentence. The letter refers to "[MPD] Policy" in the context of explaining that officers are permitted to arrest citizens who refuse to obey lawful commands. Id. Ex A. at 1. Haight provides no factual basis for the Court to infer that the "[MPD] Policy" the letter refers to permits, encourages, or ignores the use of excessive force or the denial of First Amendment rights by police officers. Far from it.

Haight nonetheless contends that the Court should allow her to "proceed to discovery to ascertain which, *if any*, policies permitted Defendant O'Bannon to violate Plaintiff's constitutional rights, and thus caused Plaintiff's injuries." Haight's Opp'n to Defs.' Mot. to Dismiss at 7 (emphasis added). But this argument essentially concedes that Haight's complaint merely speculates that some unknown MPD policy or custom *might* have been the moving force behind her injuries. Such conclusory allegations that merely recite the legal standard fall short of the requirements for pleading municipal liability. Tuttle, 471 U.S. at 823 (noting that municipal liability claims require specific factual connections between police policy and constitutional harms because otherwise virtually any allegation of harm inflicted by a municipal official would qualify). Accordingly, the Court will grant the motion to dismiss Haight's constitutional claims against the District.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendants' Partial Motion to Dismiss [ECF No. 9] is GRANTED. It is further

**ORDERED** that Count IV is hereby DISMISSED. It is further

**ORDERED** that Counts VII and VIII are hereby DISMISSED as they relate to Defendant Lanier.

**SO ORDERED.**

Christopher R. Cooper

CHRISTOPHER R. COOPER
United States District Judge

Date: April 22, 2015